UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW MEXICO

In re: OTERO COUNTY HOSPITAL    No. 11-11-13686 JR
ASSOCIATION, INC. (d/b/a
Gerald Champion Regional Medical Center,
d/b/a Mountain View Catering),

    Debtor.

DR. FRANK BRYANT,

    Plaintiff,

v.    Adversary No. 11-1202 J

JOHN G. FRANCHINI, New Mexico
Superintendent of Insurance,

    Defendant.

### ORDER DENYING MOTION OF QUORUM HEALTH RESOURCES, LLC TO INTERVENE AS PLAINTIFF PURSUANT TO RULE 7024 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

THIS MATTER is before the Court on the Motion of Quorum Health Resources, LLC to Intervene as Plaintiff Pursuant to Rule 7054 of the Federal Rules of Bankruptcy Procedure ("Motion to Intervene"). *See* Docket No. 8. Plaintiff, Dr. Frank Bryant (Dr. Bryant or "Plaintiff"), objected to the Motion to Intervene, and Defendant, John G. Franchini, New Mexico Superintendent of Insurance (Superintendent Franchini or "Defendant"), joined in the objection. *See* Docket Nos. 15 and 20. While the Motion to Intervene was pending, Plaintiff and Defendant filed a Stipulation of Dismissal due to a settlement reached between the parties and other non-parties to the adversary proceeding.[1] The Court held a final hearing on the Motion to Intervene on April 2, 2012 and took the matter under advisement.

---

[1] Quorum Health Resources filed a Motion to Strike the Stipulation of Dismissal (*See* Docket No. 21), which the Court will address by separate order.

After considering the Motion to Intervene in light of the arguments of counsel, the record of this adversary proceeding, the evidence presented at the final hearing, and applicable case law, the Court finds that, although Quorum Health Resources, LLC ("QHR") could intervene pursuant to Rule 24, Fed.R.Civ.P. based on Plaintiff's standing to pursue the claim against the Defendant, once that party is no longer prosecuting its claim due to a settlement, QHR must have independent Article III standing to assert a claim. Even if QHR could demonstrate that it has independent Article III standing to assert a claim against the Defendant, because Dr. Bryant has settled his claim against Defendant and is not seeking a judicial resolution of his claim, there is no risk of a disposition of the claim that would impair or impede QHR's ability to protect its interest as a practical matter. Consequently, the Motion to Intervene as a matter of right must be denied. Further, the Court will deny QHR's request to intervene under the permissive intervention provisions of Rule 24, Fed.R.Civ.P.

In reaching this decision, the Court FINDS and CONCLUDES:

1. Dr. Bryant filed a Complaint for Declaratory Judgment ("Complaint") in the Twelfth Judicial District Court, State of New Mexico, County of Otero on March 29, 2011 as Case No. D-1215-CV-2011-205 (the "State Court Action").

2. In the Complaint, Dr. Bryant seeks a judgment declaring that certain limitations contained in the New Mexico Medical Malpractice Act, N.M.S.A. 1978 § 41-5-1 *et. seq.* (the "Medical Malpractice Act"), on payments to be made from the Patients Compensation Fund to cover claims against a qualified health care provider are unconstitutional. Dr. Bryant is a "health care provider" as that phrase is used in the Medical Malpractice Act. *See* N.M.S.A. 1978 § 41-5-3(A).

3. QHR is not a health care provider as defined under the Medical Malpractice Act, N.M.S.A. 1978 § 41-5-3(A).

4. On November 23, 2011, a group of medical malpractice claimants (the "Tort Claimants") who had filed suits against Dr. Bryant, but who are not parties to this adversary proceeding, filed a notice of removal of the State Court Action to this Court.

5. The Tort Claimants have also asserted claims against QHR. QHR asserts that it will suffer injury in fact if the provisions in question in the Medical Malpractice Act are not held

2

unconstitutional because payment to the Tort Claimants from the Patient Compensation Fund will reduce the amount of damages recoverable by the Tort Claimants from QHR in the event QHR were held liable to the Tort Claimants. QHR denies any such liability.

6. At a continued status conference in this adversary proceeding, held January 10, 2012, the Court noted that the Tort Claimants who filed the notice of removal were not parties in the State Court Action, and stated that the Court would remand this adversary proceeding to state court based on improper removal unless a party to the State Court Action joined in the removal.

7. On January 12, 2012, QHR filed its Motion to Intervene.

8. Dr. Bryant filed a joinder in the removal on January 28, 2012. *See* Docket No. 10.

9. Plaintiff filed an objection to the Motion to Intervene on February 27, 2012, asserting, among other things, that Plaintiff and Defendant have agreed to dismiss this adversary proceeding as part of a broader settlement among Plaintiff, Defendant, and the Tort Claimants, and, therefore, no decision could be entered in this adversary proceeding that could prejudice QHR. *See* Docket No. 15. Plaintiff attached a copy of the Settlement Agreement to his objection to the Motion to Intervene. *Id.*

10. Plaintiff and Defendant filed a Stipulation of Dismissal of this adversary proceeding on March 5, 2012. *See* Docket No. 19.

11. Rule 24, Fed.R.Civ.P., made applicable to adversary proceedings by Rule 7024, Fed.R.Bankr.P., governs the procedure for intervention. There are two types of intervention: 1) intervention as a matter of right; and 2) permissive intervention. *See* Rule 24(a) and (b), Fed.R.Civ.P.

12. The language of the rule pertaining to intervention as a matter of right provides, in relevant part:
> On timely motion, the court must permit anyone to intervene who:
>> (2) Claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Rule 24(a)(2), Fed.R.Civ.P.

13. The language of the rule pertaining to permissive intervention provides, in relevant part:
> On timely motion, the court may permit anyone to intervene who:
>> (B) has a claim or defense that shares with the main action a common question of law or fact.

3

Rule 24(b)(1)(B), Fed.R.Civ.P.

14. Under the Tenth Circuit standards for intervention, a party seeking to intervene as a matter of right under Rule 24(a), Fed.R.Civ.P. must demonstrate that it has a "direct, substantial, and legally protectable" interest. *Utah Ass'n of Counties v. Clinton,* 255 F.3d 1246, 1251 (10th Cir. 2001)(quoting *Coalition of Ariz./N.M. Counties for Stable Economic Growth v. Dep't of Interior,* 100 F.3d 837, 840 (10th Cir. 1996)(quoting *Vermejo Park Corp. v. Kaiser Coal Corp. (In re Kaiser Steel Corp.),* 998 F.2d 783, 791 (10th Cir. 1993)). The Tenth Circuit applies a fairly liberal standard in allowing intervention. *Id.* at 1249 (observing that "[t]his circuit follows a 'somewhat liberal line in allowing intervention.'" (quoting *Coalition of Ariz./N.M.,* 100 F.3d at 841).

15. QHR argued at the final hearing that the level of standing required to intervene is lower than what is required under Article III standing, and that it could "piggyback" on Plaintiff's claim by standing in the shoes of the Plaintiff. It is correct that a party who seeks to intervene "under Rule 24(a) or (b) need not establish Article III standing so long as another party with constitutional standing on the same side as the intervenor remains in the case." *San Juan County, Utah v. United States,* 503 F.3d 1163, 1172 (10th Cir. 2007)(internal quotation marks omitted).

16. However, "[i]f the original parties to the case settle all the claims between them, and the intervenor wishes to challenge the settlement . . . the intervenor is then required to establish independent standing under Article III of the United States Constitution" *WildEarth Guardians v. United States Forest Service,* 778 F.Supp.2d 1143, 1151 (D.N.M. 2011)(citing *City of Colo. Springs v. Climax Molybdenum Co.,* 537 F.3d 1071, 1081 (10th Cir. 2009)). *See also, Dillard v. Chilton County Com'n,* 495 F.3d 1324, 1330 (11th Cir. 2007)(stating that "[i]ntervenors must show independent standing to continue a suit if the original parties on whose behalf intervention was sought settle or otherwise do not remain adverse parties in the litigation."); *San Juan County,* 503 F.3d at 1172 (stating that when "the original party on whose side a party intervened drops out of the litigation, the intervenor will then have to establish its own standing to continue pursuing litigation")(internal quotation marks and citation omitted). *Cf. City of Colorado Springs v. Climax Molybdenum Co.,* 587 F.3d 1071, 1073 (10th Cir. 2009)(holding that "within litigation over which a district court has retained jurisdiction after entering a final decree, a proposed intervenor may not establish piggyback standing where the existing parties in the suit are not seeking judicial resolution of an active dispute among them.").

17. Plaintiff and Defendant have reached a settlement and have filed a Stipulation of Dismissal of this adversary proceeding as part of their agreement.

18. Because Dr. Bryant, having reached a settlement with the Defendant, is no longer seeking a judicial resolution of an active dispute in this adversary proceeding, QHR cannot piggyback on Dr. Bryant's standing to pursue the claims raised in this adversary proceeding. If QHR cannot establish independent Article III standing, it may not intervene.

19. The jurisdiction of the federal courts under Article III of the United States Constitution is limited to actual cases or controversies. U.S. Const. art. III, § 2.[2] The "case" or "controversy" requirement of Article III of the Constitution requires that for a plaintiff to have standing it must allege: 1) an injury in fact (*i.e.*, a concrete and particularized invasion of a legally protected interest that is actual or imminent and not merely conjectural or hypothetical); 2) a "fairly traceable" connection between the alleged injury and the alleged conduct of the defendant; and 3) that it is likely (and not merely speculative) that the alleged injury will be redressed by the relief the plaintiff seeks.[3]

20. Even if QHR could establish independent Article III standing to assert the claims against the Defendant that Dr. Bryant was asserting before the settlement, QHR still would not have the right to intervene. Because the Plaintiff has settled and is no longer seeking a judicial resolution of his claim, and, as part of the settlement, has stipulated to the dismissal of this adversary proceeding, there no longer is a risk to QHR that a judicial resolution of the claim would, as a practical matter, impair or impede QHR's ability to protect its interest with respect to a judicial resolution of the claim.

21. QHR argues that the terms of the Settlement Agreement reached among Dr. Bryant, Superintendent Franchini, and the Tort Claimants may prejudice QHR in any independent action QHR might bring to assert the claim. However, even if QHR were permitted to intervene in this action such prejudice, if any, would remain so long as the Settlement Agreement is a valid enforceable settlement.

22. Generally, "an intervenor has no power to veto a settlement by other parties." *San Juan County,* 503 F.3d at 1189 (citation omitted). Further, "[i]t has never been supposed that

---

[2] *See, Schaffer v. Clinton,* 240 F.3d 878, 882 (10th Cir. 2002)(explaining that constitutional standing, derived from Article III of the United States Constitution, restricts federal courts' jurisdiction to suits involving an actual case or controversy).

[3] *See, Sprint Communications Co., L.P. v. APC Services, Inc.,* 554 U.S. 269, 128 S.Ct. 2531, 2535, 171 L.Ed.2d 424 (2008)("And in order to have Article III standing, a plaintiff must adequately establish: (1) an injury in fact (*i.e.,* a 'concrete and particularized' invasion of a 'legally protected interest'); (2) causation (*i.e.,* a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant); and (3) redressability (*i.e.,* it is 'likely' and not 'merely speculative' that the plaintiff's injury will be remedied by the relief plaintiff seeks in bringing suit") (citation and some internal quotation marks omitted); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992)(standing requires 1) "an invasion of a legally protected interest" which is "concrete and particularized", and "actual or imminent, not conjectural or hypothetical"; 2) that is "fairly traceable to the challenged action of the defendant"; and 3) that is likely to be "redressed by a favorable decision"") (citations and internal quotation marks omitted); *City of Colo. Springs v. Climax Molybdenum Co.,* 587 F.3d at 1079 (the requirements for Article III standing are "'(1) [t]hat it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'")(quoting *New Eng. Health Care Employees Pension Fund v. Woodruff,* 512 F.3d 1283, 1288 (10th Cir. 2008)).

one party—whether an original party, a party that was joined later, or an intervenor—could preclude other parties from settling their own disputes and thereby withdrawing from the litigation." *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 529, 106 S.Ct. 3063, 92 L.Ed.2d 405 (1986). That is precisely what has happened in this adversary proceeding: Plaintiff and Defendant independently settled their dispute and now seek to withdraw from the litigation by filing a stipulation of dismissal as part of their agreement.

23. As further support of QHR's contention that it should be allowed to intervene, QHR argued that under N.M.S.A. 1978 § 41-5-25(G) of the Medical Malpractice Act, Superintendent Franchini may not pay monies from the Patient Compensation Fund to the Tort Claimants as contemplated under the Settlement Agreement among Dr. Bryant, Superintendent Franchini, and the Tort Claimants without first obtaining court approval of the settlement between the Tort Claimants and Dr. Bryant from the state courts in which the Tort Claimants filed their lawsuits against Dr. Bryant. This Court need not reach that issue. It is sufficient for purposes of the Court's ruling that QHR does not have the right to intervene in this adversary proceeding because 1) Dr. Bryant reached a settlement of his claim in this adversary proceeding, 2) such settlement is not conditioned on court approval, 3) Dr. Bryant is no longer seeking a judicial resolution of the claim, and 4) Dr. Bryant and Superintendent Franchini have stipulated to dismissal of this proceeding.[4]

24. Under these circumstances, the Court concludes that QHR is not entitled to intervene under Rule 24(a), Fed.R.Civ.P. as a matter of right. Nor should QHR be permitted to intervene under the permissive intervention provisions of Rule 24(b), Fed.R.Civ.P.

WHEREFORE, IT IS HEREBY ORDERED that the Motion to Intervene is DENIED.

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 6, 2012

COPY TO:

David T Thuma
Attorney for Frank Bryant
500 Marquette Ave NW Ste 650
Albuquerque, NM 87102-5309

---

[4] The Court would reach the same result if Dr. Bryant and Superintendent Franchini had filed a motion to dismiss and that motion were still pending.

6

Robert M. Doughty II
Robert M. Doughty II, PC
Attorney for Frank Bryant
P.O. Box 1569
Alamogordo, NM 88311-1569

Michael W. Brennan
Brennan & Sullivan PA
Attorney for Superintendent Franchini
128 East DeVargas St
Santa Fe, NM 87501

Paul M. Fish
Attorney for Quorum Health Resources, LLC
PO Box 2168
Albuquerque, NM 87103-2168

Bernard R Given, II
Loeb & Loeb LLP
Attorney for Tort Claimants
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA 90067-4120